FW 400003760

OCT 24 2024 AM 10:24
FILED-USDC-NDTX-FW

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| **KELLY BLAND,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | **4-24CV-10220** |
| § | |
| **1ST TEXAS HEALTH & LIFE LLC**, a Texas § | |
| Limited Liability Company, **AARON** § | |
| **HANSOME** an Individual, and **JOHN DOE** § | |
| **Defendant.** § | |
| § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

## INTRODUCTION

1.     Americans receive billions of spam calls every year.

2.     Defendant 1st Texas Health & Life LLC ("1st Texas") is a company that contributes to this spam by sending illegal telemarketing calls through its telemarketers ("John Doe") for the purpose of offering health insurance.

3.     Defendant 1st is owned and controlled by Defendant Hansome.

4.     Like most Americans, Kelly Bland ("Plaintiff") has a mobile residential telephone.

5.     Plaintiff uses her mobile telephone to receive and make important calls, to get emergency information and to receive and send text messages to family members and friends. Plaintiff uses her phone regularly for her personal enjoyment.

6.     John Doe bombards unsuspecting consumers nationwide, including Plaintiff, with annoying, deceptive, telemarketing calls to sell health insurance on behalf of Defendants 1st Texas and Hansome.

7.     John Doe invaded Plaintiff's privacy and mobile telephone when John Doe sent Plaintiff a series of telemarketing calls soliciting health insurance on behalf of Defendants 1st Texas and Hansome.

8.     Plaintiff has had no relationship with Defendants 1st Texas or Hansome, has no account with Defendants, has never provided any phone number to Defendants, and has never consented to Defendants sending any type of communication.

9.     Plaintiff has tried to eliminate the harassment and invasion of privacy from unauthorized telemarketing calls by registering her mobile telephone (817) XXX-XXXX on the National Do Not Call Registry ("DNCR") since February 9, 2009, but even that did not work.

10.     "Robocalls are a nuisance. Congress banned them in the Telephone Consumer Protection Act of 1991 ("TCPA"). But as every American knows, there are companies [—like 1st Texas, LLC in this case—] who refuse to get that message while collectively sending millions of others." *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021).

## PARTIES

11.     Plaintiff Kelly Bland is a resident of Fort Worth, Texas.

12.     Defendant 1st Texas is a corporation based out of Texas.

13.     Defendant Hansome is an individual residing in Texas.

14.     John Doe is an unidentified offshore telemarketing company that makes solicitation phone calls at the instruction, direction, and oversight of Defendants 1st Texas and Hansome.

## JURISDICTION AND VENUE

15.     Jurisdiction.  This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow*

*Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendant's robocall to Plaintiff, adds little complexity to the case.

16.    Personal Jurisdiction.  This Court has general personal jurisdiction over Defendant because they have repeatedly placed robocalls to Texas residents, derive revenue from Texas businesses, and they sell goods and services to Texas residents, including the Plaintiff.

17.    Venue.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.  Residing in the Northern District of Texas when she received a robocall from Defendant is the subject matter of this lawsuit.

18.    This Court has venue over the Defendant because the robocall at issue was sent by the above-named Defendant to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

19.    In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

20.    The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic

telephone dialing system ('ATDS") or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

21.    The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

22.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

23.    Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

24.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

25.    According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

26.    The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

27.    The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

written consent to receive telemarketing robocalls must be signed and be sufficient to show that

the consumer: (1) received clear and conspicuous disclosure of the consequences of providing

the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded

messages by or on behalf of a specific seller; and (2) having received this information, agrees

unambiguously to receive such calls at a telephone number the consumer designates. In addition,

the written agreement must be obtained without requiring, directly or indirectly, that the

agreement be executed as a condition of purchasing any good or service.

28.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,

27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC

regulations "generally establish that the party on whose behalf a solicitation is made bears

ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing

the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

29.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be

held vicariously liable under federal common law principles of agency for violations of either

section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter

of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

30.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d

946, 951 – 52 (9th Cir. 2009).

31.     A corporate officer involved in the telemarketing at issue may be personally liable under

the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist.

LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate

actors can be individually liable for violating the TCPA where they had direct, personal

participation in or personally authorized the conduct found to have violated the statute." (internal

quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## LEGAL STANDARD

32.     **Autodialed Calls**. The TCPA provides that no person or entity shall make a call "using an automatic telephone dialing system or an artificial or prerecorded voice… [t]o any… cellular telephone" unless the call is "made for emergency purposes or made with the prior express consent of the called party" 47 U.S.C. § 227(b)(1)(A)(iii); *see also* 47 C.F.R. § 64.1200(a)(1). If the call "introduces an advertisement or constitutes telemarketing" then "prior express written consent" is required. 47 C.F.R. § 64.1200(a)(2).

33.     **Do Not Call Registry**. Residential telephone subscribers who do not want to receive telephone solicitations may place their phone number on the DNCR. 47 C.F.R. § 64.1200(c). The TCPA proscribes callers from making "any telephone solicitation to… [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2).

34.     **Failure to Identify Caller**. The TCPA prohibits callers from telemarketing to a residential telephone subscriber without disclosing the name of the individual caller and the name of the person or entity on whose behalf the call is being made. 47 C.F.R. § 64.1200(d)(4).

35.     **Do Not Call Requests**. Before initiating telemarketing calls, telemarketers must have a written policy relating to an internal do-not-call list and must honor do-not-call requests within a reasonable time not to exceed 30 days. 47 C.F.R. § 64.1200(d). "Telemarketers with the capability to honor such company-specific do-not-call requests in less than thirty days must do so." *Rules and Regulations Implementing the TCPA*, 68 Fed. Reg. 44144, 14069, ¶ 94. "This

process [to honor do-not-call requests] is now largely automated. *Id.*

36.    **Text messages are calls**. Both phone calls and text messages qualify as a "call" under the TCPA. *Satterfield v. Simon Schuster*, 569 F.3d 946, 954 (9th Cir. 2009).

## FACTUAL ALLEGATIONS

37.    Plaintiff's privacy and phone have been invaded by non-emergency telemarketing calls from John Doe on behalf of Defendants 1st Texas and Hansome.

38.    Plaintiff is the residential subscriber of the cell phone number (817) XXX-XXXX.

39.    Plaintiff's phone number (817) XXX-XXXX is not associated with a business and is used by Plaintiff only.

40.    Plaintiff uses this phone number as her sole residential telephone and makes and takes residential calls with this number in her home on a daily basis. Plaintiff has no other phone number that she uses for personal calls.

41.    Plaintiff's phone number is a residential telephone line because it is assigned to a cellular telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

42.    Plaintiff registered her phone number (817) XXX-XXXX on the DNCR to stop telephone solicitations on February 9, 2009.

43.    Plaintiff is a "person" as the term is defined by 47 U.S.C § 153(39).

44.    Defendant 1st Texas is a "person" as the term is defined by 47 U.S.C § 153(39).

45.    Defendant Hansome is a "person" as the term is defined by 47 U.S.C § 153(39).

46.    Defendant 1st Texas offers health insurance to consumers.

47.    Defendant Hansome owns and controls Defendant 1st Texas.

7

48.     As part of their marketing, Defendant Hansome hired and instructed an anonymous offshore telemarketer to make phone calls on behalf of Defendant 1st Texas to tele solicit health insurance.

49.     John Doe unknown entity, that through information and belief, is located offshore and out of the jurisdiction of the United States and the State of Texas.

50.     John Doe makes solicitation telephone calls at the direction, instruction, and guidance of Defendant 1st Texas and Hansome.

51.     John Doe employs the use of an automatic telephone dialing system ("ATDS") in furtherance of their telephone marketing campaign on behalf of Defendants 1st Texas and Hansome.

52.     Defendants 1st Texas and Hansome authorize the use of an ATDS by John Doe.

53.     Defendants 1st Texas and Hansome are well aware that the unauthorized phone calls being made on their behalf by John Doe are being made in violation of the TCPA.

54.     On November 6, 2023, Plaintiff received the first multiple calls from John Doe calling on behalf of Defendants 1st Texas and Hansome.

55.     Plaintiff answered and was greeted by a male telemarketer with John Doe who was soliciting health insurance.

56.     The male telemarketer falsely identified himself and advised Plaintiff he was with "Nationwide health insurance."

57.     "Nationwide health insurance" is an unregistered fictitious business name used by John Doe in attempt to hide their, Defendants 1st Texas and Hansome's identity.

58.     Plaintiff stated to the telemarketer, "I'm not interested please stop calling me thank you."

59.     Despite Plaintiff's do not call request, Plaintiff was relentlessly harassed and bombarded

with multiple telemarketing calls from John Doe calling on behalf of Defendants 1st Texas and Hansome within a six-month period.

60.     Plaintiff pleaded to John Doe on multiple calls that she was not interested and to stop calling her. However, the calls would not stop.

61.     On April 10, 2024, Plaintiff received a direct call from Defendant Hansome from phone number 1-800-733-3070. The call was silent and dropped.

62.     Approximately twenty-five minutes later Plaintiff called back phone number 1-800-733-3070 in order to identify the caller.

63.     Plaintiff was connected to Defendant Hansome who was soliciting health insurance.

64.     John Doe provided Defendant Hansome with Plaintiff's information as a lead.

65.     Defendant Hansome pays John Doe a commission fee for every lead John Doe generates on behalf of Defendants 1st Texas and Hansome.

66.     Plaintiff stated Defendant Hansome, "If I'm interested, I will give you a call back, but I don't need to get any additional calls, ok?" Defendant Hansome stated to Plaintiff, "Ok, you got it."

67.     On April 16, 2024, Plaintiff received another call from John Doe telemarketer who was soliciting health insurance.

68.     The male telemarketer falsely identified himself and advised Plaintiff he was with "nationwide health insurance."

69.     Plaintiff engaged in the call in order to identify who John Doe was calling on behalf of.

70.     The male telemarketer asked Plaintiff qualifying questions provided by Defendant 1st Texas and advised Plaintiff that she was perfectly qualified.

71.     The telemarketer advised Plaintiff he was going to transfer her to a local licensed agent.

72. Plaintiff was live transferred with no interruption or disconnection of the call to a licensed agent with Defendant 1st Texas.

73. Defendant 1st Texas agent solicited Plaintiff for health insurance on behalf of Defendant 1st Texas.

74. Upon information and belief John Doe shares a software system with Defendant 1st Texas that allows John Doe to enter new leads and/or live transfer new leads directly to Defendant 1st Texas.

75. John Doe entered Plaintiff's information as a new lead into Defendant 1st Texas' system.

76. Each and every call John Doe made to Plaintiff was made using an ATDS.

77. John Doe's ATDS has the capacity to store and produce telephone numbers to be called, using a random or sequential number generator and to dial such numbers.

78. The alleged calls John Doe made to Plaintiff on behalf of Defendant 1st Texas were not made to Plaintiff directly and could have reached anyone in the United States (indicating the call was made using an ATDS).

79. Plaintiff has never been a customer of Defendants 1st Texas or Hansome, and has had no relationship with Defendants, which is an indication of the use of an ATDS.

80. Defendant 1st Texas or John Doe had no reason to have Plaintiff's phone number (817) XXX-XXXX in their possession or in any database or spreadsheet that would have been used to call Plaintiff.

81. Table below displays the dates/times/Caller ID of the alleged calls Plaintiff received from and/or on behalf of Defendants to her phone number (817) XXX-XXXX.

| Number: | Date/Time: | Caller ID: |
|---------|-----------|-----------|
| 1 | November 6, 2023 @ 10:20am Central | 817-535-0523 |

| 2 | January 24, 2024 @ 11:25am Central | 817-535-0930 |
| 3 | January 29, 2024 @ 3:26pm Central | 817-535-0897 |
| 4 | February 23, 2024 @ 9:44am Central | 817-535-0523 |
| 5 | April 10, 2024 @ 11:26am Central | 800-733-3070 |
| 6 | April 13, 2024 @ 12:22pm Central | 817-535-0469 |
| 7 | April 16, 2024 @ 5:46pm Central | 817-535-0523 |

82.    Defendants 1st Texas and Hansome refuse to curtail their illegal behavior because violating the TCPA generates Defendants substantial profit gains.

83.    Upon information and belief, Defendants 1st Texas or Hansome do not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents either directly or through John Doe. Plaintiff is a Texas resident. The https://direct.sos.state.tx.us/telephone/telephonesearch.asp site ("Texas Registration Database") does not contain any of the Defendants' registration.

84.    Defendants 1st Texas or Hansome don't qualify for an exemption under § 302.053.

85.    Plaintiff never provided her prior express written consent to receive any of the alleged calls.

86.    None of the alleged calls were made to Plaintiff for emergency purposes.

87.    In short, the alleged calls invaded Plaintiff's privacy and caused a nuisance, an annoyance, and an intrusion into Plaintiff's seclusion.

## VICARIOUS LIABILITY OF DEFENDANTS 1ST TEXAS AND HANSOME FOR THE ACTIONS OF JOHN DOE

88.    Plaintiff realleges paragraphs one through eighty-seven and incorporates them herein as if set forth here in full.

11

89.    Defendants are vicariously liable for the telemarketing calls that generated Plaintiff's lead on their behalf.

90.    The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

91.    The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

92.    The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

93.    The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted)

(alteration marks and internal quotation marks omitted).

94.    More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

95.    The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

96.    To the contrary, the FCC—armed with extensive data about robocalls and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

97.    Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

98.    Defendants are legally responsible for ensuring that John Doe makes telemarketing calls on behalf of Defendants and comply with the TCPA when so doing.

99.    Defendants knowingly and actively accepted business from John Doe that originated through illegal telemarketing.

100.    Defendants knew (or reasonably should have known) that John Doe was violating the TCPA on their behalf but failed to take effective steps within their power to force John Doe to cease that conduct.

101.   By hiring a company to make calls on its behalf, Defendants "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

102.   Moreover, Defendants maintained interim control over the actions of John Doe.

103.   For example, Defendants had absolute control over whether, and under what circumstances, they would accept a customer from John Doe.

104.   Furthermore, Defendants had day-to-day control over the actions of John Doe, including the ability to prohibit them from using an ATDS to contact potential customers of Defendants and the ability to require them to respect the National Do Not Call Registry.

105.   Defendants also gave interim instructions to its telemarketers by providing lead-qualifying instructions and lead volume limits.

106.   Defendants donned John Doe with apparent authority to make the calls at issue. Thus, John Doe pitched health insurance in the abstract.

107.   Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

108.   "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

109.   A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

110.    John Doe transferred customer information, including Plaintiff's contact information, directly to Defendant 1st Texas. Thus, John Doe had the "ability . . . to enter consumer information into the Defendant 1st Texas sales or customer systems," which the FCC has explained to show apparent agency. *Dish*, 28 FCC Rcd. at 6592 ¶ 46.

111.    Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

112.    Defendants are the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain Plaintiff as a customer when John Doe solicited Plaintiff for health insurance on behalf of Defendants.

## PERSONAL LIABILTY OF DEFENDANT HANSOME

113.    Plaintiff realleges paragraphs one through one hundred and twelve and incorporates them herein as if set forth here in full.

114.    Upon information and belief Defendant Hansome refuses to take any action to stop or curtail the unlawful sales practices and illegal unauthorized phone calls because these practices benefit Defendants 1st Texas and Hansome financially.

115.    "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

116.    The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct....or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

117.    Upon information and belief, at all times material to the Complaint, acting alone or in concert with others, Defendant Hansome has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant 1st Texas including the acts or practices set forth in this Complaint.

118.    Upon information and belief, Defendant Hansome is the principal director and operator of Defendant 1st Texas, controls the day-to-day operations of Defendant 1st Texas and directed their representatives, employees, agents, salespersons, and/or John Doe to make TCPA violating phone calls to solicit health insurance on behalf of Defendants.

119.    Upon information and belief, Defendant Hansome is not merely a bystander and is the mastermind that schemed, planned, directed, initiated, and controlled the illegal and fraudulent behavior.

120.    Upon information and belief, Defendant Hansome is well aware his conduct violated the TCPA and Tex. DPTA and refused to alter his behavior. Defendant Hansome is the sole director

of Defendant 1st Texas and the only person with the power to make the unlawful, fraudulent, and unethical behavior stop. Yet, Defendant Hansome has taken no steps to stop the behavior because this behavior benefits Defendants financially.

121.    Defendant Hansome should be held jointly and severally liable for both the TCPA violations and via the Tex. DTPA because he actually committed the conduct that violated the TCPA and Tex. DTPA, and/or he actively oversaw and directed this conduct.

122.    Defendant Hansome should be held liable because to do otherwise would simply allow him to dissolve Defendant 1st Texas and set up a new corporation and repeat his conduct thus frustrating the purposes of the TCPA and DTPA.

## VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 305.053

123.    The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

124.    Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 302.101

125.    The actions of the Defendants violated the Texas Business and Commerce Code 302.101 by authorizing John Doe to place solicitation phone calls to a Texas resident on behalf of Defendants without having a registration certificate and bond on file with the Texas Secretary of State.

126.    Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by

17

Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code §
302.303.

127.    The "use or employment by any person of a false, misleading, or deceptive act or
practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code
§ 17.50.

128.    Texas Business and Commerce Code §302.101 states that a person (1) "may not make a
telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas],"
(2) "unless the [person] holds a registration certificate for the business location from which the
telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

129.    Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek
damages of up to $5000 per violation of §302.101.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE ALLEGED CALLS

130.    The calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a
"nuisance and invasion of privacy."

131.    The calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and
interests in Plaintiff's cellular telephone.

132.    The calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

133.    Plaintiff has been harmed, injured, and damaged by the alleged call including, but not
limited to: reduced device storage, reduced data plan usage, frustration, anger, invasion of
privacy, and more frequent charging of her cell phone.

## CAUSES OF ACTION

### COUNT ONE:
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent
### (Against All Defendants)

134.    Plaintiff realleges paragraphs one through one hundred and thirty-three and incorporates them herein as if set forth here in full.

135.    Defendants and/or their affiliates or telemarketers violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least six (6) times by placing non-emergency telemarketing calls to Plaintiff's cellular telephone number using an automatic telephone dialing system without her prior express written consent.

136.    Plaintiff was statutorily damaged at least six (6) times under 47 U.S.C. § 227(b)(3)(B) by the Defendants by the telephone calls described above, in the amount of $500.00 per call.

137.    Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

138.    Plaintiff is also entitled to and does seek an injunction prohibiting Defendants and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing calls to any cellular telephone number using an ATDS and/or without prior express written consent.

## COUNT TWO:

## (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

139.    Plaintiff realleges paragraphs one through one hundred and thirty-eight and incorporates them herein as if set forth here in full.

140.    The foregoing acts and omissions of Defendants and/or their affiliates or telemarketers constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

141.    Plaintiff was statutorily damaged at least seven (7) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the telemarketing calls described above, in the amount of $500.00 per call.

142.    Plaintiff was further statutorily damaged because Defendants willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

143.    Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE:

## (Violations of The Texas Business and Commerce Code 305.053)
## (Against All Defendants)

144.    Plaintiff realleges paragraphs one through one hundred and forty-three and incorporates them herein as if set forth here in full.

145.    The foregoing acts and omissions of Defendants and/or their affiliates or telemarketers constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing calls to Plaintiff's cellular telephone number without her prior express written consent in violation of 47 U.S.C. § 227 et seq. Defendant violated 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

146.    Plaintiff seeks for herself an award of at least $500.00 in damages for each such violation. **Texas Business and Commerce Code 305.053(b).**

147.    Plaintiff seeks for herself an award of up to $1,500.00 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

### COUNT FOUR:

**(Violations of Texas Business and Commerce Code 302.101)**
**Failure to obtain a Telephone Solicitation Registration Certificate**
**(Against All Defendants)**

148.    Plaintiff realleges paragraphs one through one hundred and forty-seven and incorporates them herein as if set forth here in full.

149.    Defendants' telemarketers and/or agents made at least seven (7) solicitation sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

150.    As a result of Defendants telemarketer and/or agents violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation.  Tex. Bus. and Com. Code 302.302(a).

21

151.    As a result of Defendants telemarketer and/or agents violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Kelly Bland prays for judgment against the Defendants jointly and severally as follows:

A.    Leave to amend this Complaint to name additional DOES as they are identified and to conform to the evidence presented at trial;

B.    A declaration that actions complained of herein by the Defendants violates the TCPA and Texas state law;

C.    An injunction enjoining the Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.    An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the Defendants for 6 calls.

E.    An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the Defendants for 7 calls.

F.    An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053 intentional violations jointly and severally against the Defendants for 7 calls.

G.    An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101 intentional violations jointly and severally against the Defendants for 7 calls.

H.    An award to Plaintiff of damages, as allowed by law under the TCPA and Texas state law;

I.    An award to Plaintiff of interest, costs, and attorneys' fees, as allowed by law and equity

J.    Such further relief as the Court deems necessary, just, and proper.

October 24, 2024,

Kelly Bland
*Plaintiff, Pro Se*
1001 Prairie Heights Dr
Fort Worth, TX 76108
Phone: 817-903-2161
Kellybland516@gmail.com

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

KELLY BLAND

## DEFENDANTS

1ST TEXAS HEALTH & LIFE LLC et al

OCT 24 2024 AM 10:3
RECEIVED-USDC-NDT

**(b)** County of Residence of First Listed Plaintiff  **FORT WORTH**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  **TRAVIS**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
PRO SE

Attorneys *(If Known)*

## 4-24CV-1022-O

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | | ☒ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 710 Fair Labor Standards Act | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 720 Labor/Management Relations | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 751 Family and Medical Leave Act | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 790 Other Labor Litigation | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | ☐ 791 Employee Retirement Income Security Act | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **SOCIAL SECURITY** | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 861 HIA (1395ff) | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 862 Black Lung (923) | |
| | | ☐ 550 Civil Rights | ☐ 863 DIWC/DIWW (405(g)) | |
| | | ☐ 555 Prison Condition | ☐ 864 SSID Title XVI | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 865 RSI (405(g)) | |
| | | | **FEDERAL TAX SUITS** | |
| | | **IMMIGRATION** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| | | ☐ 462 Naturalization Application | ☐ 871 IRS—Third Party 26 USC 7609 | |
| | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
47 U.S.C.
Brief description of cause:
TCPA VIOLATIONS

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $
54,500.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____  DOCKET NUMBER _____

DATE
10/24/2024

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____